# ÆTNA LIFE INS. CO. v. PHILLIPS.
## No. 912.

Circuit Court of Appeals, Tenth Circuit.
March 21, 1934.

W. E. Green, of Tulsa, Okl. (J. C. Farmer and Gerald Fitz-Gerald, both of Tulsa, Okl., on the brief), for appellant.

Chas. B. Rogers, of Tulsa, Okl. (E. O. Patterson, of Tulsa, Okl., on the brief), for appellee. .

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

Nancy Potter Phillips brought this action against the Insurance Company to recover upon a policy of life insurance. The petition alleged that on March 21, 1921, Jesse M. Phillips made application to the Insurance Company for a seven-year term policy of life insurance for $15,000 payable to plaintiff, his wife, as sole beneficiary; that pursuant to such application the Insurance Company issued to Jesse M. Phillips its policy No. 281,-024 for $15,000, payable to plaintiff upon the death of insured; that on April 8, 1928, the Insurance Company issued to insured, in lieu of policy 281,024, a converted modified-life policy No. N 744,237 for $15,000; that insured died on November 19, 1931; that policy 744,237 was then in full force and effect, and that due proof of death was made in accordance with the requirements thereof; that $15,000 was payable thereunder to plaintiff as sole beneficiary, and that the Insurance Company had failed and refused to pay the same.

There was attached to the petition copies of the original application, the application for conversion, and policy 744,237. The portions thereof here material are these:

"No. N 744,237                    Age 55

"Ætna Life Insurance Company, Hartford, Connecticut, (herein called the Com-

pany) hereby agrees to pay Fifteen Thousand Dollars (herein called the sum insured) immediately upon receipt at its Home Office of due proof of the death of Jesse M. Phillips (herein called the Insured) to the beneficiary, the executors, administrators or assigns of the insured. * * *

"During the lifetime of the insured, the right to receive all cash values, loans and other benefits accruing hereunder, to exercise all options and privileges described herein and to agree with the Company to any change in or amendment to this policy shall vest alone in the insured (herein called the Life Owner), subject, however, to any assignment by said life owner. * * *

"The beneficiary may be changed as often as desired, and such change shall take effect on receipt at the Home Office of the Company, before the sum insured or any installment thereof becomes due, of a written request accompanied by the policy for endorsement. * * *

"16. Assignments. No assignment of this policy shall be binding upon the Company unless and until the original or a duplicate thereof is filed at its Home Office. The Company does not assume any responsibility for the validity of an assignment. * * * "

"Application

ance, one for $15,000 and one for $2,000; that two seven-year term policies were issued on the life of insured, one for $2,000 naming H. B. Alexander as beneficiary, and one numbered 281,024 for $15,000 designating plaintiff as beneficiary; that a copy of such application was attached to each of such policies; that the $2,000 policy lapsed for non-payment of premiums; that prior to the expiration of policy 281,024, and upon the written application of the insured, the Insurance Company changed the beneficiary named therein from plaintiff to the insured's estate; that thereafter such term policy was converted into modified life policy 744,237, wherein the estate of the insured was designated as beneficiary, and that a copy of the original application was attached to policy 744,237.

It further alleged "that when this application reached the Home Office and written to show that H. B. Alexander, a creditor, was designated as beneficiary under the $2000.00 policy, pursuant to a custom and rule of the Home Office of this defendant, there was written into the application, the phrase after the designation of H. B. Alexander, a creditor, as his interest may appear, the following: 'Subject to change only on request of beneficiary and myself,' and that this phrase was written into said application to apply to the $2000.00 policy only; and, that said phrase

6. What is the Name, Residence, and Relationship, or insurable interest, of the person to be benefited by this Policy in event of your death?

It is desired that the Policy be written with respect to the beneficiary as nearly in accordance with the above request as the experience of the Company will suggest as being most likely to meet the requirements, and the acceptance of the Policy so written will be regarded as an acknowledgment that the Company has complied with the wishes of the applicant.

"Application for Conversion
"May 2nd, 1928.

"I, Jesse M. Phillips of Nashville, County of Davidson, State of Tenn., hereby apply to the Ætna Life Insurance Company for changed insurance on my life, in accordance with the conditions of Term Policy 281,024, issued by said Company, and I hereby certify that said policy is not now assigned except to * * * and agree that the statements and answers in the application of said term policy shall be the basis of the new contract or policy herein applied for and form a part of the same, except that the kind of policy, amount, premium and beneficiary shall be as specified below. * * *

"Beneficiary to be the same as now written in term policy."

The first amended answer of the Insurance Company alleged that on March 21, 1921, insured made an application to the Insurance Company for two policies of term life insur-

was written by the Company following its custom and rule, so as to protect a designated creditor beneficiary. That said phrase was not in said application at the time it was signed by Jesse M. Phillips or Jesse Martin Phillips and that it was not his designation, but was the designation of this defendant, so as to protect a creditor named as beneficiary and extended to and applied to the $2,000.00 policy only. And that there was no restriction by the applicant Jesse M. Phillips on the beneficiary named under the $15,000.00 term policy; * * * that under said policy (744,237) the beneficiary is directed to be, 'The executors, administrators or assigns of the insured.'"

Such answer further alleged that the Insurance Company received a written assignment of policy 744,237 wherein insured assigned all of his interest therein to Alexander, and noted such assignment on its records; that after the death of the insured, Alexander

submitted proof of death and filed his claim under such policy, and such claim was paid and the policy surrendered.

The answer denied that plaintiff had any right under policy 744,237 at the date of the death of the insured, and denied that it owed plaintiff $15,000 or any other amount on such policy.

The answer also alleged certain other facts by way of estoppel.

Plaintiff moved to strike the above quoted portions of the answer and demurred to the remainder thereof. The court entered an order sustaining such motion and demurrer, and gave the Insurance Company seven days in which to file a second amended answer. Within that time the Insurance Company filed a second amended answer. It repleaded the allegations of the first answer which had been stricken, adding thereto that the phrase, "Subject to change only on request of beneficiary and myself," was written into the application in red ink.

The second amended answer greatly amplified the plea of estoppel. It alleged that long prior to the expiration of policy 281,024 plaintiff had knowledge that the insured had changed the beneficiary therein to his estate; that plaintiff, at the time policy 744,237 was issued, had knowledge of the conversion of policy 281,024 for policy 744,237, and the designation of the estate of insured as the beneficiary under the latter policy; that prior to the death of the insured plaintiff had knowledge that the insured had assigned such policies to Alexander; that after the death of insured plaintiff asserted that insured's indebtedness to Alexander was approximately $7,000 and demanded that Alexander account to her for the balance of the monies paid him under policy 744,237, and that because of such facts plaintiff had acquiesced in such changes in such policies, the assignments thereof and the payment to Alexander, and was estopped to assert her alleged cause of action.

Thereafter plaintiff moved to strike the second amended answer from the files on the ground that it repleaded matters stricken from the original answer, and matters to which the demurrer had been sustained.

The court struck said second amended answer from the files "particularly for the reason that said second amended answer of defendant" did "not state a defense to plaintiff's petition." Exceptions were duly reserved to the sustaining of the demurrer and the two motions to strike.

After the court had sustained the second motion to strike, the Insurance Company refused to plead further. The plaintiff thereupon moved for judgment on the pleadings. The court sustained this motion and gave judgment for $15,000. The Insurance Company has appealed.

Counsel for the plaintiff contend that the Insurance Company waived any error committed by the court in sustaining the first motion to strike and the demurrer when it pleaded further and filed its second amended answer, and that there was no error in striking the second amended answer, because it repleaded matters theretofore stricken or held insufficient on demurrer.

▇▇ Where a demurrer has been sustained to a party's pleading and he elects to plead over, he waives any error in the ruling on the demurrer.[1]

The rule has its basis in the fact that the amended pleading supersedes and takes the place of the original pleading.[2]

▇▇ Where however an amended or supplemental pleading is stricken from the files, the original pleading is restored.[3]

Therefore, if we consider the second amended answer as stricken at the time the Insurance Company elected not to further plead, the original was restored and the Insurance Company must be regarded as having stood thereon.

[1] Clearwater v. Meredith, 1 Wall. 25, 42, 17 L. Ed. 604; Poling v. Jeffords, 56 App. D. C. 88, 10 F.(2d) 653; Pollack v. Meyer Bros. Drug Co. (C. C. A. 8) 233 F. 861, 864; Wagner v. Thorpe, 151 Okl. 142, 2 P.(2d) 1027. See, also, cases cited in Note 2.

[2] Colgrove v. Hayden Lake Irr. Dist., 40 Idaho, 489, 235 P. 434; Dawkins v. People's Bank & Trust Co., 117 Okl. 181, 245 P. 594; Ottawa County Nat. Bank v. Bouldin, 117 Okl. 104, 246 P. 434; Pritchard v. Merc. Trust Co., 65 Cal. App. 327, 224 P. 103; Havlick v. Davidson, 15 Idaho, 787, 100 P. 91; Sylvester v. Craig, 18 Colo. 44, 31 P. 387; Brittan v. Oakland Bank of Savings, 112 Cal. 1, 44 P. 339; Sholes v. Citizens' State Bank of Holyoke, 82 Colo. 432, 261 P. 456.

[3] State ex rel. Peteet v. Frenger, 34 N. M. 151, 278 P. 208; Spooner v. Cady, 4 Cal. Unrep. 539, 36 P. 104; St. Francis Land & Abstract Co. v. Rathburn, 84 Kan. 664, 114 P. 862; Boyer v. Crichton, 100 Cal. App. 24, 279 P. 677.

However, the ruling of the trial court clearly indicates that it treated the motion to strike the second amended answer as a demurrer thereto. The order recited that the answer was stricken principally because it did not state a defense to plaintiff's petition. In State v. American Surety Co., 78 Mont. 504, 255 P. 1063, it was held that a motion to strike from an amended answer affirmative defenses which had been held insufficient on a general demurrer to the answer, was in effect a further demurrer to their sufficiency. In Hays v. Peavey, 43 Wash. 163, 86 P. 170, it was held that an order granting a motion to strike an amended complaint on the ground that it stated the same facts that had been set forth in the original pleading and held insufficient on demurrer, was in effect the sustaining of a demurrer to the amended complaint. We conclude that we should consider the motion to strike as a demurrer, and should pass upon the sufficiency of the defenses pleaded in the second amended answer.

It will be noted that under the provisions of the policy proper, the right to change the beneficiary was reserved, and that the right to make any change in, or amendment to the policy was vested alone in the insured. These provisions clearly gave the insured the right to change the beneficiary without the latter's consent. Therefore, if we consider the qualifying clause in the application, "subject to change only on request of beneficiary and myself," as applicable to the $15,000 policy, there is an irreconcilable conflict between the policy proper and the application. In such a case the provisions of the policy control.[4]

We are of the opinion that the location of the phrase, "Subject to change only on request of beneficiary and myself," plainly shows that it was intended to apply to only the $2,000 policy. So construed, any conflict between the policy proper and the application is reconciled.

But, if we assume that on the face of the policy and application the language to which this qualifying phrase is applicable is uncertain, then is there an ambiguity which would warrant the admission of evidence of the surrounding facts and circumstances, and the situation of the parties at the time the contract was entered into?

It was laid down by Lord Bacon that a latent ambiguity may be explained by extrinsic evidence, but that a patent ambiguity may not. Bacon's Law Tracts, p. 99, 100; Greenleaf on Evid. (15 Ed.) vol. 1, § 297; 22 C. J. 1191.

It is well settled that where a written contract is so uncertain as to leave room for construction, that evidence of the surrounding facts and circumstances and the situation of the parties at the time it was entered into, may be shown not to vary, add to, or contradict the provisions of the contract, but to aid the court in determining what the parties intended by the terms employed.[5]

And under the weight of modern authority, a patent ambiguity which cannot be removed by parol evidence is one that appears on the face of the instrument and occurs when the expression of the contract is so defective that a court when undertaking to place a construction on it, with the light of the situation of the parties, the surrounding facts and circumstances at the time it was entered into, and their subsequent conduct relating thereto, cannot ascertain what they meant.[6]

---

[4] New York Life Ins. Co. v. Tolbert (C. C. A. 10) 55 F.(2d) 10, 12; Baker v. Keet-Rountree Drygoods Co., 318 Mo. 969, 2 S.W.(2d) 733, 738, 3 S.W.(2d) 1003; Goodwin v. Provident Sav. Life Assur. Soc., 97 Iowa, 226, 66 N. W. 157, 159, 32 L. R. A. 473, 59 Am. St. Rep. 411; Harr v. Highland Nobles, 78 Neb. 175, 110 N. W. 713; Business Men's Assur. Co. v. Marriner, 223 Mich. 1, 193 N. W. 907, 910; Logan v. Provident Sav. Life Assur. Soc., 57 W. Va. 384, 50 S. E. 529, 530.

[5] Operators' Oil Co. v. Barbre (C. C. A. 10) 65 F.(2d) 857; Rockefeller v. Merritt (C. C. A. 8) 76 F. 909, 35 L. R. A. 633; Drainage Dist. No. 1 of Lincoln County v. Rude (C. C. A. 8) 21 F.(2d) 257; Cook v. Foley (C. C. A. 8) 152 F. 41; Frankfort Broom Co. v. Western Warehouse Co. (C. C. A. 8) 200 F. 398;

Accumulator Co. v. Dubuque St. Ry. Co. (C. C. A. 8) 64 F. 70; United States v. Bethlehem Steel Co., 205 U. S. 105, 118, 27 S. Ct. 450, 51 L. Ed. 731; Lowrey v. Hawaii, 206 U. S. 206, 221, 27 S. Ct. 622, 51 L. Ed. 1026; Jones v. Guaranty & Indemnity Co., 101 U. S. 622, 631, 25 L. Ed. 1030; Metcalf v. Williams, 104 U. S. 93, 98, 26 L. Ed. 665; Deutschle v. Wilson (C. C. A. 8) 39 F.(2d) 406; Ryan v. Ohmer (C. C. A. 2) 244 F. 31; Newport News Shipbuilding & D. D. Co. v. United States (C. C. A. 4) 34 F.(2d) 100, 105, 106; Massachusetts Bonding & I. Co. v. Concrete Steel B. Co. (C. C. A. 4) 37 F.(2d) 695, 702.

[6] Higinbotham v. Blair, 308 Ill. 568, 139 N. E. 909, 910; Franklin K. Pearce Co. v. Beverly Beach, 107 N. J. Law, 73, 150 A. 399, 400; Fagan v. Walters, 115 Wash. 454, 197 P. 635; Geo. Tritch Hdw. Co. v.

Therefore if, upon a fair consideration of the contract, doubt exists as to whether the qualifying phrase was intended to apply to the beneficiaries in policies 281,024 and 744,-237, evidence of the surrounding facts and circumstances and the situation of the contracting parties at the time the contract was entered into, and their subsequent conduct relating thereto, would be admissible to aid the court in solving that uncertainty, but not to add to, vary, or contradict the terms of the contract.

Assuming, as we must, the truth of the facts pleaded in the second amended answer, we conclude that the qualifying phrase was applicable only to the beneficiary in the $2,000 policy, and that the insured reserved the right in each of the other policies to change the beneficiary without the latter's consent.

Having reserved the right to change the beneficiary without the latter's consent, insured had the right to assign the policy without the consent of the beneficiary.[7]

It follows that the second amended answer stated a good defense to the petition.

The judgment is reversed and the cause remanded with instructions to reinstate the second amended answer, and to proceed further in accordance with this opinion.

Donovan, 74 Colo. 350, 221 P. 881; Shannon Copper Co. v. Potter, 13 Ariz. 245, 108 P. 486, 488; Schlottman v. Hoffman, 73 Miss. 188, 18 So. 893, 55 Am. St. Rep. 527; Peacher v. Strauss, 47 Miss. 353; Fish v. Hubbard's Adm'rs, 21 Wend. (N. Y.) 651; Harney v. Wirtz, 30 N. D. 292, 152 N. W. 803, 809; Teague v. Sowder, 121 Tenn. 132, 114 S. W. 484; Goodsell v. Rutland-Canadian R. Co., 75 Vt. 375, 56 A. 7.

In Franklin K. Pearce Co. v. Beverly Beach, supra, the court said: "A patent ambiguity is that which appears on the face of an instrument, and occurs when the expression thereof is so defective that a court, which is obliged to place a construction upon it, cannot, placing itself in the situation of the parties, ascertain therefrom their intention."

In Shannon Copper Co. v. Potter, supra, the court said: "If the court, after placing itself in the situation in which the parties stood at the time of executing the instrument, and with full understanding of the force and import of the words, cannot definitely ascertain the meaning and intention of the parties from the language of the instrument thus illustrated, it is a case of incurable and hopeless uncertainty, and the instrument is so far inoperative and void; and it cannot be sustained or rendered operative by the introduction

of evidence which would necessarily have the effect of adding new terms to the writing."

In Higinbotham v. Blair, supra, the court said: "It is a long-established rule of law that a patent ambiguity in a deed cannot be explained by extrinsic evidence. * * * Such an ambiguity is one which appears on the face of the writing itself, and while the court will receive evidence of the surrounding circumstances and collateral facts, so as to place itself in the situation of the parties at the time of executing the instrument, if there still remains incurable and hopeless uncertainty it cannot be cured by extrinsic evidence."

In Snider v. Robinett, 78 W. Va. 88, 88 S. E. 599, 601, the court said: "Where there is a patent ambiguity, by which is meant an uncertainty appearing on the face of the instrument, proof of the situation of the parties, the circumstances surrounding them at the time of the writing and their subsequent conduct relating thereto, showing a practical construction of it, but not of their parol declarations, is admissible to aid in its construction."

[7] Hopkins v. Northwestern Life Assur. Co. (C. C. A. 3) 99 F. 199; Lamb v. Mutual Reserve Fund L. Ass'n (C. C. Pa.) 106 F. 637; Elmore v. Continental L. I. Co., 131 Kan. 335, 291 P. 755; Hawkes v. Mobley, 174 Ga. 481, 163 S. E. 494, 497.